**U.S. Department of Justice**



*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 24, 2007

**By Hand Delivery**

The Honorable Loretta A. Preska
United States District Judge
500 Pearl Street, Room 1320
New York, New York 10007
Fax: (212) 805-7941

     Re:    <u>United States v. Tahir Ali Khan, et al.</u>
              S1 07 Cr. 711 (LAP)

Dear Judge Preska:

     The Government respectfully writes concerning two issues in the above-referenced criminal case. First, the Government challenges the appointment of Legal Aid counsel for defendant Tahir Ali Khan, because that appointment was based upon a financial affidavit submitted by Khan that is plainly fraudulent. Second, we write to inform the Court that defendant Ghulam Mehmood is requesting another bail hearing (his third). As discussed herein, we are not aware of any change of circumstances meriting reconsideration of Mehmood's bail status.

**A.**    **Appointment of Counsel for Tahir Ali Khan**

     On August 15, 2007, defendant Tahir Ali Khan sought and was granted appointment of Legal Aid counsel based upon a financial affidavit completed and signed by him using the name "Waheed Khan."[1] A copy of that affidavit is attached hereto as <u>Exhibit A</u>. When the parties first appeared before Your Honor on August 20, 2007, the Government was prepared to challenge the appointment of counsel on the ground that Khan's financial affidavit is fraudulent. However, because Khan represented at the August 20 conference that he intended to retain private counsel in any event, the Court gave Khan until September 10, 2007 to do so, and instructed the Government that it could challenge Khan's appointment of counsel if Khan had not retained private counsel by September 10. As of the date of this letter, Khan has not retained private counsel.

---

    [1] Count Sixteen of the Indictment charges Khan with committing immigration fraud by fraudulently assuming the identity of "Waheed Khan" in order to obtain a permanent resident alien card and other immigration benefits.

Hon. Loretta A. Preska
September 24, 2007
– page 2 –

        The legal standards governing eligibility for appointed counsel are clear.  It is the defendant's burden to establish financial eligibility for appointed counsel by a preponderance of the evidence.  See United States v. O'Neil, 118 F.3d 65, 74 (2d Cir. 1997) ("When requesting the appointment of counsel, the burden is on the defendant to show that he is unable to afford representation, though he need not prove that he is indigent."); United States v. Harris, 707 F.2d 653, 661 (2d Cir. 1983) (the defendant seeking appointment of counsel must "prove by a preponderance of the evidence that he is financially unable to afford counsel"); United States v. Hilsen, 03 Cr. 919, 2004 WL 2284388 (S.D.N.Y. Oct. 12, 2004) (Sweet, J.), at * 3 ("The person seeking appointment of counsel has the responsibility of providing the court with sufficient and accurate information upon which the court can make an eligibility determination.") (quoting 7 Administrative Office of the United States Court, Guide to Judiciary Policies and Procedures § 2.03(C)).

        A defendant can seek to make the necessary showing of eligibility by (i) sworn affidavit, or (ii) statement under oath in open court before a district judge or magistrate judge. Hilsen, 2004 WL 2284388, at * 3; Harris, 707 F.2d at 663.  The Government is entitled to be heard on the issue of a defendant's eligibility for assigned counsel.  See, e.g., United States v. Herbawi, 913 F. Supp. 170, 173 (W.D.N.Y. 1996).  However, the Government may not use as part of its direct case, other than a prosecution for perjury or false statement, any information provided by a defendant in connection with his or her request for the appointment of counsel on grounds of financial inability to secure counsel.  Harris, 707 F.2d at 662-63; see also United States v. Branker, 418 F.2d 378, 380 (2d Cir. 1969).

        Khan's financial affidavit is materially false in numerous respects.  First, his affidavit is based upon the fraudulent representation that, prior to being arrested, he resided in a modest, rented apartment in Brooklyn, for $500 in monthly rent.[2]  That is not true.  Khan and his family in fact resided in a lavish lakefront home at 964 Lake Circle in Hoover, Alabama. Photographs of the Alabama house are attached as Exhibit B.  Khan appears to have rented the Brooklyn apartment as a spare apartment at which to stay during trips to New York.

        Second, in the financial affidavit, Khan listed his sole source of income as $1,800 per month from a job with "N&N Motors."  That representation also is false.  Apart from failing to report the millions of dollars in fraud proceeds that Khan has earned through the charged schemes, Khan failed to disclose his paid employment for an Alabama company called "Sunshine Wholesale," and his financial interest in other corporations.

_____

        [2]  Khan falsely told Pretrial Services that he and his wife and child resided in a Brooklyn apartment at 49 Nixon Court, Apt. 2H, for which he paid $500 in monthly rent.  Similarly, in his financial affidavit, Khan stated that he pays $500 in monthly rent – a reference to the Nixon Court apartment.

Hon. Loretta A. Preska
September 24, 2007
– page 3 –

Third, in his financial affidavit, Khan listed his only money (i.e., in cash on hand or money in savings or checking accounts) as a mere $800. That, too, is false. At the time of his arrest, on August 15, 2007, Khan was found in possession of $10,000 in cash. During a court-authorized search executed at Khan's Alabama home that same day, law enforcement agents found expensive jewelry, foreign currency, and approximately $4,000 in U.S. currency, not to mention extremely opulent home furnishings (including an indoor waterfall and a 70-inch plasma flat-screen television). Khan has also been regularly observed during Government surveillances driving luxury vehicles including a Porsche and a BMW. Records also show that Khan often travels both domestically and internationally. All of this indicates that Khan has had access to large sums of money.

Finally, in the financial affidavit, Khan provided a false name for his wife, listing her as "Elsa Kahn." Records obtained from various sources – including mail found in Khan's Alabama home, and filings by Khan with U.S. immigration authorities applying for legal status for his wife – show that Khan's wife's name is "Ansa Sayyaz" (sometimes written as "Ansa Fayyaz"). The fact that Khan provided a false name for his wife in his financial affidavit raises additional concerns that he is intentionally misleading the Court in an effort to hide his assets.

We note that the Government has filed a bill of particulars seeking for forfeit Khan's Alabama home, and its furnishings, as evidence and proceeds of criminal activity. While Khan thus cannot use those assets to pay for legal counsel, the Government has cause to believe that Khan has other hidden assets in the United States and abroad. In an event, it is not the Government's burden to identify what assets Khan has to pay for counsel; rather, it is Khan's burden to prove that he cannot afford counsel. The financial affidavit submitted by Khan utterly fails to meet that burden, because it is materially false and misleading.

**B.     Mehmood's Request for a Third Bail Hearing**

The Government has been advised by Roger Stavis, Esq., newly retained counsel for defendant Ghulam Mehmood, that Mehmood is requesting another bail hearing. This would be Mehmood's third bail hearing. As discussed herein, we are not aware of any change of circumstances meriting reconsideration of Mehmood's bail status.

Mehmood was initially ordered detained by Magistrate Judge Peck on August 15, 2007, following a bail hearing. At that initial hearing, statements by Mehmood about his employment status were so obviously false that Magistrate Peck warned Mehmood to stop speaking because he was exposing himself to perjury charges.

Mehmood's second bail application was heard by Your Honor on August 20, 2007. Following a hearing, the Court again remanded Mehmood. The transcript of Mehmood's August 20 bail hearing is attached hereto as Exhibit C. In finding that no set of conditions would

Hon. Loretta A. Preska
September 24, 2007
– page 4 –

assure Mehmood's return to court, the Court observed that the charges against Mehmood were serious; that the weight of the evidence against Mehmood was "extremely heavy"; that Mehmood has used other names and is charged with making false ID documents, including fake visas; that Mehmood has strong ties to Pakistan, including a wife and children and six siblings living in Pakistan; that Mehmood appears to have lied to Pretrial Services about his employment; that Mehmood does not have regular employment and, as proffered by the Government, was caught on tape stating that he doesn't work because he makes his entire living using fake "chicken" IDs; that Mehmood declined urinalysis; and that he was overheard on the wiretap discussing his desire and intent to leave the United States to live in Dubai. (Tr. at 48-49).  Based upon those considerations, the Court found that Mehmood is a flight risk, and that no set of conditions could guarantee his return to court.

The Government is unaware of any change in circumstances that would warrant a third bail application by Mehmood, or justify reconsideration of the Court's decision   Mehmood remains a serious flight risk, and he was properly ordered detained.

Should the Court desire to hold a conference on either of these issues discussed in this letter, we are ready to attend.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By:    Lisa Zornberg / Elie Honig / Meryl Lutsky
Assistant U.S. Attorneys
(212) 637-2720

cc by mail to:

Roger Stavis, Esq. (Counsel to Ghulam Mehmood)
Peter Tsapatsaris, Esq. (Counsel to Tahir Ali Khan)

cc by ECF to all other counsel

**EXHIBIT A**

# FINANCIAL AFFIDAVIT

IN UNITED STATES  ☐ MAGISTRATE  ☐ DISTRICT  ☐ APPEALS COURT or  ☐ OTHER PANEL (Specify below)

IN THE CASE OF

| | |
|---|---|
| U S | v.s. | Kan |

FOR

AT

LOCATION NUMBER

PERSON REPRESENTED (Show your full name)

Waheed Khan

| | | |
|---|---|---|
| 1 | ☐ | Defendant— Adult |
| 2 | ☐ | Defendant - Juvenile |
| 3 | ☐ | Appellant |
| 4 | ☐ | Probation Violator |
| 5 | ☐ | Parole Violator |
| 6 | ☐ | Habeas Petitioner |
| 7 | ☐ | 2255 Petitioner |
| 8 | ☐ | Material Witness |
| 9 | ☐ | Other |

CHARGE/OFFENSE (describe if applicable & check box →)   ☑ Felony   ☐ Misdemeanor

DOCKET NUMBERS

Magistrate

District Court
S1 07 cr 711

Court of Appeals

## ANSWERS TO QUESTIONS REGARDING ABILITY TO PAY

**EMPLOYMENT**

Are you now employed?  ☑ Yes   ☐ No   ☐ Am Self-Employed

Name and address of employer:  N & N Motors

IF YES, how much do you earn per month? $  $1800

IF NO, give month and year of last employment
How much did you earn per month? $

If married is your Spouse employed?   ☐ Yes   ☑ No

IF YES, how much does your Spouse earn per month? $

If a minor under age 21, what is your Parents or Guardian's approximate monthly income? $

**ASSETS**

**OTHER INCOME**

Have you received within the past 12 months any income from a business, profession or other form of self-employment, or in the form of rent payments, interest, dividends, retirement or annuity payments, or other sources?   ☐ Yes   ☑ No

RECEIVED                SOURCES

IF YES, GIVE THE AMOUNT RECEIVED & IDENTIFY THE SOURCES   $

**CASH**

Have you any cash on hand or money in savings or checking accounts?   ☑ Yes   ☐ No  IF YES, state total amount $  800

**PROPERTY**

Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)?  ☑ Yes   ☐ No

IF YES, GIVE THE VALUE AND DESCRIBE IT   VALUE $ 15,000   Car   DESCRIPTION

**OBLIGATIONS & DEBTS**

**DEPENDENTS**

MARITAL STATUS
☐ SINGLE
☑ MARRIED
☐ WIDOWED
☐ SEPARATED OR DIVORCED

Total No. of Dependents  2

List persons you actually support and your relationship to them
Lisa Kuhn - Wife
Alisha Khan - Daughter

**DEBTS & MONTHLY BILLS**
(LIST ALL CREDITORS INCLUDING BANKS LOAN COMPANIES CHARGE ACCOUNTS ETC.)

| APARTMENT OR HOME | Creditors | Total Debt | Monthly Paymt. |
|---|---|---|---|
| Rent | | | $ 500 |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

I certify under penalty of perjury that the foregoing is true and correct  Executed on (date)  8-15-07

SIGNATURE OF DEFENDANT (OR PERSON REPRESENTED)  ►  Waheed Khan

**EXHIBIT B**





**EXHIBIT C**

7 8KUKHAC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ---------------------------x
     UNITED STATES OF AMERICA,
 3
                    v.                        07 CR 711(LAP)
 4
     TAHIR ALI KHAN,
 5   FAYYAZ AHMED,
     ARIE BENSHIMON
 6   NAVEED ALI BHINDAR,
     SYED HASSAN,
 7   MOHAMMED ISHAQ,
     BASHARAT JARRAL,
 8   NADEEM KHAN,
     GHULAM MEHMOOD,
 9   SHAHEEN MUKHTAR,
     QAISER QURESHI,
10   FRANKLIN RODRIGUEZ,
     SYED SHAH,
11   OSCAR SANCHEZ,
     PRADPIT SHARMA,
12
                    Defendants.
13   ---------------------------x
                                              New York, N.Y.
14                                            August 20, 2007
                                              3:50 p.m.
15

16   Before:

17                  HON. LORETTA A. PRESKA

18                                        District Judge

19                       APPEARANCES

20   MICHAEL J. GARCIA
          United States Attorney for the
21        Southern District of New York
     BY:  LISA ZORNBERG
22        ELIE HONIG
          Assistant United States Attorneys
23        -and-
     MERYL LUTSKY
24        Special Assistant United States Attorney

25
```

78KUKHAC

1    against the defendant on the paragraph 3 factors.

2           In addition, with respect to paragraph 4, the drug use

3    is, as always, a concern with respect to the danger to the

4    community.

5           Taking all of these factors into account, counsel, I

6    find that Magistrate Judge Peck was entirely correct in finding

7    that there were no conditions that would adequately assure this

8    defendant's presence in court and the safety of the community.

9           MR. DUNN:  Just for the record, your Honor, not to

10   interrupt but I didn't make a bail application.  I withdrew it.

11          THE COURT:  I am sorry.  I didn't realize that.  In

12   that case, looking at it de novo, I make the same finding, Mr.

13   Mr. Dunn.

14          Thank you for correcting me.

15          Anything further with respect to Mr. Sanchez, counsel?

16          MS. ZORNBERG:  No, your Honor.

17          THE COURT:  Thank you, Mr. Dunn.

18          MR. DUNN:  Thank you, your Honor.

19          THE COURT:  With respect to Mr. Mehmood.

20          MR. DuBOULAY:  I can't sit up here and defend this

21   case on the facts.  The government has the advantage, having

22   investigated this case and has all of the documents.  That is

23   just one factor.

24          Another factor, probably the most important issue here

25   is, is there any condition or set of conditions that would

78KUKHAC

1    reasonably assure this man's appearance in court.

2         I propose a package that will assure that.  I propose

3    a package of $250,000 of secured bonds, secured by a co-op

4    property of Mr. Mehmood's ex-wife.  She is in court today.

5    They were married for nine years, and they have three children

6    who live in that co-op.  She is willing to put up that co-op.

7    I am not sure what the equity is, but I know it is worth

8    between 150 and 170,000 dollars.  She is prepared to put up

9    that co-op.  She is also prepared to put up $10,000 in cash.

10        We also have another suretor who flew in from Chicago

11   just for this bail application at the request of his wife.  He

12   is a businessman.  He has a clothing store in Chicago.  He has

13   had this store for almost 15 years.  He is prepared to sign the

14   bond.

15        Mr. Mehmood is a citizen of this country, been here

16   since 1989.  He has no prior record.  This is not a crime of

17   violence.  We would even go so far as to have home detention

18   and electronic monitoring, if the Court is so desirous.  While

19   he is not employed at this time, he does have and he is willing

20   to go out and get a job driving taxis.  And we would ask that

21   the Court order home detention, that he be allowed to work.

22        So I think there are a set of conditions that can

23   guarantee his return to court that are stringent enough, strict

24   pretrial reporting that will insure his return to court.

25        The government has his passport.  Although he has some

78KUKHAC

1   family in Pakistan, he has family here too who have a lot to

2   lose.

3          So I would ask the Court to accept the package put

4   forth by the probation department.  Although we only have two

5   suretors now, we think that is enough.  If not, we will

6   endeavor to find a third suretor, but we think that package is

7   stringent enough and fair enough to ensure his return to court.

8   And I would ask your Honor to set that bail.

9          Thank you.

10         THE COURT:  Thank you, sir.

11         MR. HONIG:  Your Honor, we oppose bail.

12         First of all, Mr. Mehmood does have significant

13   connections to Pakistan.  All six of his siblings are in

14   Pakistan.  His current wife and three children are in Pakistan.

15   I understand maybe he has some other family here, but he also

16   has a family in Pakistan.  He has made between 10 and 15 trips

17   to Pakistan since 1989.

18         Mr. Mehmood has no legitimate employment and,

19   furthermore, he tried to pull the wool over the eyes of

20   pretrial and Judge Peck.  Mr. Mehmood tried to tell pretrial

21   that he is a taxi driver at an unspecified address in Brooklyn

22   at work.  We called that out in front of Judge Peck and found

23   out that he has never owned a taxi.  He has been surveilled

24   many times, never been seen driving a taxi, never seen a taxi

25   parked in front of his house.

78KUKHAC

1    Furthermore, he is on, literally, hundreds of calls,

2    no mention of a job.  In fact, he brags about not having to

3    work because he makes all of his money off of chickens.  And as

4    the Court may be aware --

5         THE COURT:  Chickens?

6         MR. HONIG:  Chickens meaning fake IDs.  They are code

7    words for fake IDs.  In fact, during the proceeding in front of

8    Judge Peck, Mr. Mehmood, through counsel, started trying to

9    explain his taxi driving job and Judge Peck said, why don't you

10   just hold on.  Talk to your lawyer.  Maybe you are getting into

11   perjury here.  Today, Mr. DuBoulay has done a good job in

12   attempting to claim that he is legitimate taxi driver.

13        He declined urinalysis.  That is another factor.

14        He has used fake names.

15        In a recent call he talked about leaving the United

16   States to go live in Dubai.  He, obviously, didn't know that it

17   was being monitored, and with someone that he trusts, and he is

18   serious about leaving this country, whether it is Pakistan or

19   Dubai is really of no difference.

20        With respect to the evidence on Mr. Mehmood, he is

21   charged with, basically, all of the crimes charged in this

22   indictment except the car ring.  He is charged with identity

23   theft, the aggravated identity theft, the credit card fraud,

24   the bank fraud, the mortgage fraud and the money laundering.

25        Mr. DuBoulay talked about the government is at an

78KUKHAC

1   advantage with the evidence.  I am willing to even out the

2   advantage and just go on the overt acts that we put in the

3   indictment.  Those are the tip of the iceberg.  There are

4   something above 80 overt acts in the indictment alone on this

5   defendant.

6          And just two or three highlights, we have Mr. Mehmood

7   on conversations telling the co-defendant, Give me a photo of

8   someone so I can put on a beard and open up a new account.

9          We have Mr. Mehmood asking another co-defendant, Did

10  you do the new ID, and ordering that person to change the

11  picture on the ID.

12         Just two more examples, we have Mr. Mehmood talking

13  with Mr. Kahn, who is seated right here in the jury box about

14  using a third individual to pose for a picture, but have that

15  third individual dye his hair black and shave his moustache.

16         And probably most worrisome, we have a call in

17  December 6 of '06 set out in the indictment where Mehmood is

18  discussing not only making regular identification documents,

19  ID, driver's licenses and that sort of thing, but having

20  pictures that he can make a visa which, obviously, you combine

21  that with his connections to Pakistan, his talk on the wires

22  about moving to Dubai, as the Court will see -- and we used

23  some of these in front of the magistrate -- these are

24  convincing documents when you get somebody talking about having

25  the ability to make a visa, the risk is just too great.

78KUKHAC

```
1          THE COURT:  Mr. DuBoulay.
2          MR. DuBOULAY:  Judge, the gist of the government's
3    argument, that they have a strong case against my client, that
4    is one aspect.  I think there are restraints and constraints
5    that can be put in place to make sure that he sticks around --
6    meeting with pretrial once a week, home detention with
7    electronic monitoring.  You have a co-op apartment where his
8    kids and wife live.  I don't think that he is going to put that
9    at risk.  Obviously, his ex-wife and he are close to his
10   children.  They have been married for nine years, been
11   separated for three or four years.  She came to court and she
12   still supports him.  I don't think that he is going to destroy
13   her faith by running away.  There were many constraints that
14   can be put in place to make sure that he is here and that is
15   really the real issue in this case.
16          The government talks about a visa.  They talk about --
17   and, obviously, I am not privy to that information -- that he
18   wants to, not that he is in the business of doing that and I
19   don't know what the context is of that.
20          So I think, Judge, all in all, the package that I gave
21   this Court is a very strong package.  He is at home with his
22   family, home detention.  I would ask the judge to set bail, as
23   I have suggested to your Honor.  The case has been put on.  It
24   is a very complex matter.
25          THE COURT:  Thank you.
```

78KUKHAC

1        Anything else?

2        MR. HONIG:  That home is subject to forfeiture.  He

3  purchased it with proceeds of fraud, and it is in the bill of

4  particulars that we have served on counsel for the defendant.

5        THE COURT:  Anything else?

6        MR. DuBOULAY:  No, your Honor.

7        THE COURT:  Again, the nature and circumstance of the

8  offenses charged here are that they are serious offenses,

9  although not violent offenses.  The weight of the evidence

10  against this defendant is also extremely heavy.  The

11  discussions about making various types of fake ID, fake visa

12  documents and the like is extremely damaging and, thus, the

13  weight of the evidence is heavy.

14        In considering the history and characteristics of the

15  defendant while, again, I acknowledge the defendant's family is

16  here, apparently he has much more family, indeed, another wife

17  and children in Pakistan.  He has made numerous trips,

18  apparently, 10 to 15 trips to Pakistan since 1989.  Six of his

19  siblings reside in Pakistan, as I mentioned, together with his

20  current wife and children.

21        With respect to employment, it appears that he lied to

22  pretrial services, doesn't have regular employment and is

23  apparently caught on tape stating that he doesn't work because

24  he makes his entire living producing fake IDs.

25        I note that he declined urinalysis, has used several

78KUKHAC

1    names and was overheard discussing his desire and intent to

2    leave the United States to live in Dubai.

3            Taking all of those factors into account, there

4    appears to be no set of circumstances that will assure this

5    defendant's appearance at the trial of this matter.

6    Accordingly, no bail will be set.

7            Anything else with respect to Mr. Mehmood?

8            MR. DuBOULAY:  No, your Honor.

9            MR. HONIG:  No, your Honor.

10           THE COURT:  Anything else at all?

11           MR. DuBOULAY:  No, your Honor.

12           MS. ZORNBERG:  No, your Honor.

13           THE COURT:  Thank you, ladies and gentlemen.

14           Thank you, Mr. Marshal.

15                          o    0    o

16

17

18

19

20

21

22

23

24

25